IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

v.                                                      CASE NO. 1:05-cr-00045-MP-AK

ALEJANDRO MARTIN CABEZAS,

    Defendant.
_____/

**O R D E R**

This matter is before the Court on Doc. 17, Defendant's Sealed Motion requesting that this Court suppress the fruits of the search of defendant's residence ("LaCrosse property") on July 1, 2005. A hearing was held on this matter on Tuesday, January 3, 2006.

In support of his motion, the defendant refers to the facts contained within the application for the search warrant which states that on January 19, 2005, defendant pawned a Browning Model BAR, .30-06 caliber semi-automatic rifle at the Gold Standard West Pawn Shop. The application goes on to state that on February 17, 2005, defendant claimed the same rifle from pawn. Finally, the application states that on April 22, 2005, defendant "sold a black powder rifle to Pickett Weaponry Service, Inc.," in Newberry, Florida. Defendant asserts that "after the February 17, 2005, event, there is no documentary evidence between February 17, 2005 and the execution of the search warrant on July 1, 2005, of any nexus of firearms to the residence searched." Doc. 17 at 2. Defendant goes on to claim that "there was never any nexus established, between the residence and the firearms, other than conjunction [sic] and speculation on the part of law enforcement." Id.

Defendant asserts that this is a "bare bones affidavit which contains 'wholly conclusory

statements, which lack the facts and circumstances from which the Magistrate can independently determine probable cause.'" Doc. 17 at 3 (citing United States v. Satterwhite, 980 F.2d 317, 321 (5th Cir. 1992)).  As defendant sees it, this case "discloses a single criminal transaction of possessing a rifle on February 17, 2005.  This staleness of evidence coupled with transient existence of a chattel combined with a lack of nexus between any firearm and the defendant's residence should result in a suppression of seized evidence and any inculpatory statements, made by the defendant."  Doc 17 at 3.

In its response, the Government points out that in all three transactions, the defendant listed the searched premise as his home.  Additionally, the Government makes note of the fact that the search warrant application and affidavit also reports a June 22, 2004, report to the Alachua County Sheriff's Office of shots being fired at the LaCrosse address (defendant's listed address that was searched).  See Doc. 17 at 12.  Thus, the Government states that the facts indicate that the defendant was involved in a string of firearm-related activities from June 22, 2004, until April 22, 2005, all of which listed the defendant's LaCrosse residence.  As firearms are "fungible object[s]" that are not "consumed," the Government claims that the was "undoubtedly a 'fair probability' that the object would be found at the particular place identified."  Doc. 22 at 3.

After considering the matter, the court hereby grants defendant's motion.  "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location."  United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999) (citation omitted).  The circumstances in this case failed to lead to such a conclusion.  While defendant may have

engaged in various transactions involving firearms, all transactions occurred outside of the searched premises. Additionally, the fact that a man identifying himself as "Alajandro" placed a 911 emergency call reporting that shots were fired at the LaCrosse property and that the suspects were fleeing the scene does not provide sufficient probable cause to conclude that defendant himself possessed a firearm in the residence. Accordingly, the court finds that there was an insufficient nexus between any firearm and the defendant's residence, and thus there was insufficient probable cause to warrant searching defendant's residence.

The court also finds the warrant invalid on staleness grounds. The Eleventh Circuit has defined stale search warrants as "warrants that, when issued, were based on information too old to create a sufficient probability that the items sought were still at the location to be searched. In other words, the passage of time made it more likely that the circumstances upon which the warrant was issued had changed, thus dissipating probable cause." United States v. Santa, 236 F.3d 662, 672 n. 15 (11th Cir. 2000). Courts have held that "the information supporting the government's application for a warrant must show that probable cause exists *at the time the warrant issues*." United States v. Bervaldi, 226 F.3d 1256, 1264 (11th Cir. 2000) (emphasis added). "There is no particular rule or time limit for when information becomes stale." Id. at 1265. Rather, "staleness is an issue which must be decided on the peculiar facts of each case." United States v. Bascaro, 742 F.2d 1335, 1345 (11th Cir. 1984) (quoting United States v. Hyde, 574 F.2d 856, 865 (11th Cir. 1978)). However, there are factors which should serve as guidance in this area:

> In addition to the length of time, courts should consider the 'nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched.' For example, the former Fifth Circuit held that four-month-old reports

of projectiles in the walls and floors of a dwelling as a result of the test-firing of the murder weapon were not stale because the 'floors and walls of a house are relatively permanent fixtures and would not likely be subject to removal over the period of four months.'

Bervaldi, 226 F.3d at 1264 (internal citations and footnotes omitted). In considering the nature of the crime, the Courts have "distinguished between criminal activity which is protracted and continuous and that which is isolated." Id. For instance, "where an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." Id. (quoting Bascaro, 742 F.2d at 1345-1346).

In the present case, the search warrant was issued primarily based on a collection of isolated incidents all occurring over two months prior to the issuance of the search warrant. As such, these incidents failed to provide sufficient probable cause that the defendant possessed a firearm at his residence at the time the warrant was issued. Therefore, any evidence seized during the search of the LaCrosse property should be suppressed. The court reserves ruling on the issue of whether any inculpatory statements made by Mr. Cabezas should also be suppressed, as this matter was not fully argued at the hearing on this issue. Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant's Motion to Suppress, Doc. 17, is GRANTED. Any evidence seized during the search of the LaCrosse property is suppressed.

2.. The court reserves judgment on the issue of whether any inculpatory statements made by Mr. Cabezas should also be suppressed.

**DONE AND ORDERED** this __6th__ day of January, 2006

  *s/Maurice M. Paul*
  Maurice M. Paul, Senior District Judge